IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OLUWOLE AKINDELE (#2013-1005137), )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SUPERINTENDENT ARCE and COMMANDER )<br>HICKEY, )<br>)<br>Defendants. ) | Case 15 C 5952<br><br>Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

Plaintiff Oluwole Akindele, a pretrial detainee at the Cook County Jail, alleges in this *pro se* 42 U.S.C. § 1983 suit against Superintendent Arce and Commander Hickey that he was housed for nine days in a cell with a non-flushing toilet. Defendants have moved for summary judgment. Doc. 61. Plaintiff has not responded to the motion, despite having been given two opportunities to do so and having been warned that the court would rule on the motion without the benefit of a response if he failed to file one. Docs. 66, 71. The motion is granted.

**Background**

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their summary judgment motion. Doc. 63. The relevant factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants filed and served on Akindele a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant

opposing summary judgment. Doc. 64. Akindele did not file a response brief, a Local Rule 56.1(b)(3)(B) response to the Local Rule 56.1(a)(3) statement, or a Local Rule 56.1(b)(3)(C) statement of additional facts.

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (third alteration in original) (internal quotation marks omitted); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, __ F. App'x __, 2017 WL 129943 (7th Cir. Jan. 13, 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have … repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Akindele's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*,

423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Accordingly, the court will accept as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statement, viewing those facts and the inferences therefrom in the light most favorable to Akindele. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with [Local Rule 56.1(b)(3)(C)], the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Cady*, 467 F.3d at 1061; *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). That said, the court is mindful that "a nonmovant's … failure to comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that [the movant] is entitled to judgment as a matter of law." *Raymond*, 442 F.3d at 608 (citations omitted). The court therefore will recite the facts in Defendants' Local Rule 56.1(a)(3) statement and then determine whether, on those facts, they are entitled to summary judgment.

Akindele challenges the conditions of his confinement while he was housed in Cell 3263 in Division 9 at Cook County Jail in May 2015. Doc. 63 at ¶ 2. At that time, both Arce and Hickey were staffed in Division 9. *Id*. at ¶¶ 16-19.

On May 3 at 7:30 a.m., the toilet in Akindele's cell overflowed after he flushed it, spilling urine, feces, and bread onto the floor. Doc. 63 at ¶¶ 3-4. Akindele testified that "not that much" feces spilled onto the floor and that he never came in contact with human waste. *Id*. at ¶¶ 5-6. An officer promptly responded to his calls for help, gave Akindele a mop, bag, dustpan, and gloves, and told Akindele that he would put in a work order and call a plumber. *Id*. at ¶¶ 7-8. After cleaning his cell, Akindele placed a towel over the toilet. *Id*. at ¶ 9. This was the only time the toilet overflowed. *Id*. at ¶ 15.

On May 11, a plumber fixed the toilet, so Akindele's waste remained in the toilet from May 3 to May 11. *Id*. at ¶¶ 11-12. During that nine-day period, Akindele was able to use the dayroom restroom during dayroom time, which was 90 minutes each morning and evening. *Id*. at ¶ 13. A guard told Akindele that if he needed to use the restroom at other times, he could ask for permission. Doc. 63-1 at 186. Akindele estimated that, apart from dayroom time, he used toilets outside of his cell approximately three times during those nine days. Doc 63 at ¶ 14.

Akindele testified that he continued to use his toilet when he could not use alternative facilities, meaning that his waste accumulated unflushed between May 3 and May 11. *Id*. at ¶ 10. His inability to readily access a flushing toilet caused him to experience cramping and pain. *Id*. at ¶ 22. He has not been diagnosed with any disorder that causes him to defecate more than an average person or any with medical condition as result of his toilet not flushing, *id*. ¶¶ 21, 24, and the record does not indicate that he ever soiled himself. After the toilet was fixed on May 11,

4

Akindele's cramps stopped. *Id*. at ¶ 23. Akindele testified that after the repair, it took him approximately a week and half to adjust to using a toilet regularly again. *Id*. at ¶ 25.

As for Defendants' involvement, on May 6 or 7, Akindele told Arce that his toilet was broken. *Id*. at ¶ 16. Arce advised Akindele that a work order had been submitted, that a plumber should be coming to repair the toilet, and that, in the meantime, he could use the toilet in the dayroom. *Id*. at ¶ 17. After Akindele told Arce that some officers were not allowing him to use the dayroom bathrooms, Arce stated, "we'll see what we can do." *Id*. at ¶ 18.

On May 8, Akindele told Hickey that his toilet was broken. Doc. 63 at ¶ 19. In response, Hickey stated, "[W]e will fix it." *Ibid*. A work order was submitted to fix the toilet, which—as noted—was repaired on May 11. *Id*. at ¶¶ 20, 23.

**Discussion**

Defendants argue that the lack of a flushing toilet in Akindele's cell for nine days does not rise to the level of a constitutional deprivation and that, in any event, no evidence indicates that they acted with the state of mind necessary to support a finding of deliberate indifference.

The Fourteenth Amendment's Due Process Clause governs a pretrial detainee's claim based on unconstitutional conditions of confinement. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). That said, "there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions-of-confinement claims, and … such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test." *Id*. at 310; *see also Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 554 n.31 (7th Cir. 2016) (reaffirming this due process standard for deliberate indifference claims by pretrial detainees notwithstanding *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015),

5

which holds that the due process standard for excessive force claims by pretrial detainees is less demanding than the Eighth Amendment standard for excessive force claims by convicted inmates). To prevail on his conditions of confinement claim, Akindele must establish that: (1) he was housed under conditions that were "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities"; and (2) Defendants were deliberately indifferent to that deprivation. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). These two elements are referred to as the "objective component" and the "subjective component," respectively. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

As to Akindele's claim that the May 3 toilet overflow caused an unconstitutionally unsanitary environment under the objective component, the Seventh Circuit has recognized constitutional violations "where prisoners are deprived of cleaning supplies and running water only in extreme circumstances." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Thus, a "complete lack of cleaning supplies, coupled with unduly adverse conditions, can amount to a constitutional violation." *Lyons v. Vergara*, 2016 WL 4493455, at *10 (N.D. Ill. Aug. 26, 2016); *see also Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment for the defense where the prisoner was deprived of basic sanitation items for six days while housed in a cell that had no working sink or toilet, water covering the floor, and blood and feces smeared on the walls). When assessing the objective severity of unsanitary conditions, the court must consider their nature and duration, as well as any resulting harm. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (noting that the alleged unconstitutionality of a pest infestation turned in part on "how extensive the infestation of a prisoner's cell is … and how long the infestation

continues"); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.") (internal quotation marks omitted).

The deprivation here was not unconstitutionally severe. Although the plumbing malfunction is unfortunate, no record evidence suggests that Akindele was unable to maintain basic personal hygiene despite the presence of a non-flushing toilet that was covered by a towel. Importantly, "not that much" feces spilled out of the toilet onto the floor, and Akindele summoned help quickly and received supplies (including gloves to prevent direct contact with the human waste) that he used to promptly clean his cell. Although other waste lingered in the toilet bowl for more than a week—surely causing foul odors—on this record it cannot be said that conditions in the cell grew so unsanitary as to deny Akindele the minimal civilized measure of life's necessities. *Compare Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (finding a possible constitutional violation where "the walls of [Johnson's] cell were smeared with 'human defecation,' the water was not turned on and nothing was done for three days despite Johnson's requests to Pelker for cleaning supplies and water"), *with Hardiman v. Sheahan*, 1998 WL 89110, at *2 (N.D. Ill. Feb. 13, 1998) (Williams, J.) ("While living in a cell with a plugged toilet for 13 days strikes this court as a harsh condition, it does not represent a deprivation of constitutional dimension. Mere exposure to offensive cell odors, such as those of a toilet, does not offend the Constitution.").

As to Akindele's claim that his lack of unfettered access to a flushing toilet for a nine-day period is unconstitutional, it is true that adequate toilet facilities "are among the minimal civilized

7

measure of life's necessities that must be afforded prisoners." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012); *see also Hicks v. Irvin*, 2014 WL 1292541, at *6 (N.D. Ill. Mar. 31, 2014) (noting that access to working plumbing is a "basic human necessit[y] in the prison context"). That said, a "short-term breakdown of an inmate's in-cell plumbing where the inmate is otherwise provided with food, beverages, access to showers, and access to toilets, does not rise to the level of a constitutional violation." *Mims v. Hardy*, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (collecting cases); *see also Wilkins v. Merkle*, 2015 WL 5544312, at *5 (N.D. Ill. Sept. 18, 2015) (noting that "broken in-cell plumbing, while inconvenient, does not generally rise to the level of a constitutional violation" and that the plaintiff "was not deprived of drinking water or bathroom facilities" despite broken in-cell plumbing because "he had access to a 'day room,' which had a water fountain, showers, and toilets"); *Muhammad v. Wilson*, 2006 WL 2413710, at *2 (N.D. Ill. Aug. 16, 2006) (holding that broken in-cell plumbing for seven days "was an inconvenience" that "did not amount to a constitutional violation"); *Hardiman*, 1998 WL 89110, at *1-2 (dismissing a conditions of confinement claim where the inmate alleged that his toilet was clogged for thirteen days, during which time he and a cellmate had periodic access to bathrooms outside the cell but "sometimes" had to use the clogged toilet).

Here, Akindele had access to working plumbing for ninety minutes in the morning and evening of each day that his toilet did not flush. He was able to access other facilities at least three times, and he testified that one guard offered to let him use a bathroom outside his cell upon request. Although his toilet did not flush, he was still able to use it occasionally without its contents overflowing. These conditions did not rise to the level of an unconstitutional deprivation. *See Muhammad*, 2006 WL 2413710, at *2; *Hardiman*, 1998 WL 89110, at *1-2.

8

Even if Akindele satisfied the objective element of his claim, no reasonable jury could find deliberate indifference. To show deliberate indifference in a conditions of confinement claim, a detainee must identify evidence indicating that jail officials knew about the condition but refused to take reasonable steps to resolve it. *See Gray*, 826 F.3d at 1008 ("The warden must have known of and disregarded an excessive risk to inmate health or safety.") (internal quotation marks and brackets omitted). "[I]t is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Townsend*, 522 F.3d at 773. A plaintiff instead must show that an official "actually knew of" a dangerous condition and "consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

The undisputed facts show that Defendants did not ignore the situation when Akindele brought it to their attention. The in-cell toilet overflowed on May 3. On either May 6 or 7, Akindele told Arce that he could not flush the toilet. Arce reacted by promising Akindele that the problem would be addressed. Arce also guaranteed a short-term fix by reassuring Akindele that he could use the toilet in the dayroom until a repair occurred. When Akindele told Arce that some officers were not allowing him to do so outside normal dayroom hours, Arce said, "we'll see what we can do." A jail official's promise to "look into" an inmate's complaints does not show deliberate indifference where there is no evidence that the official did not perform the promised follow-up within a reasonable period of time. *See Wilkins*, 2015 WL 5544312, at *6 (holding that a correctional official's submission of a work order to address plumbing issues, followed by a subsequent repair, did not show a triable issue of material fact regarding deliberate indifference); *Couch v. Godinez*, 2014 WL 7048464, at *7 (S.D. Ill. Dec. 12, 2014) (granting summary judgment on a failure to protect claim because, given that the defendant official stated that he "would look

9

into" the inmate's complaints and then relayed the concerns to Internal Affairs, "[n]o reasonable jury could find that Defendant Ryker knew of *and disregarded* an excessive or substantial risk to Plaintiff's safety"). Here, Akindele received access to temporary bathroom accommodations largely as promised, and a formal work order was submitted, at the latest, a day or two after he and Arce spoke. This shows that his complaints did not fall on "deaf ears"—that is, Arce did not "refus[e] or declin[e]" to exercise his authority to deal with the matter, as the deliberate indifference standard requires. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).

The same reasoning applies with even greater force to Hickey. Akindele testified that on May 8, he spoke with Hickey about his toilet being broken. In response, Hickey told Akindele that "we will fix it." A work order was submitted, and the toilet was repaired on May 11. That conduct does not reflect deliberate indifference. *See Wilkins*, 2015 WL 5544312, at *6.

## Conclusion

Defendants' summary judgment is granted, and Akindele's claims against them are dismissed with prejudice. Final judgment will be entered. If Akindele wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment and pay the $505.00 filing fee. *See* Fed. R. App. P. 4(a)(1). Under Fed. R. App. P. 24(a)(1) and 28 U.S.C. § 1915, Akindele may move this court to allow him to proceed *in forma pauperis* on appeal, which will allow him to pay that fee in installments. The fee must be paid regardless of the appeal's outcome; however, if Akindele is successful, he may be able to shift the cost to Defendants. *See* Fed. R. App. P. 39(a)(3); *Thomas v. Zatecky*, 712 F.3d 1004, 1005 (7th Cir. 2013) ("A litigant who proceeds *in forma pauperis* still owes the fees. If he wins, the fees are shifted to the adversary as part of the costs; if he loses, the fees are payable like any other debt."). If the appeal is found to be

non-meritorious, Akindele could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit or appeal a judgment in federal court without prepaying the filing fee, unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

Akindele need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Akindele wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a Rule 59(e) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

February 3, 2017

_____
United States District Judge